IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BALTIC BEHEER B.V. & D. van URK, as owner of the M/V BALTIC, | ) ) ) |
| Plaintiff, | ) ) CASE NO. 1:20-cv-102 |
| v. | ) ) ) IN ADMIRALTY |
| CAC MARITIME, INC., | ) ) |
| Defendant. | ) ) ) |

## VERIFIED COMPLAINT UNDER RULE B OF THE SUPPLEMENTAL RULES APPLICABLE TO ADMIRALTY

Plaintiff, BALTIC BEHEER B.V. & D. van URK (hereinafter "BALTIC"), files this Verified Complaint against the Defendant, CAC MARITIME, INC. (hereinafter "CAC"), in a cause, civil and maritime, for the recovery of losses resulting from CAC's breach of a Time Charter with BALTIC by failing to pay hire pursuant to the terms of said Time Charter. BALTIC alleges on information and belief as follows:

### PARTIES

1. At all times hereinafter mentioned, Plaintiff, BALTIC, was and is in the business of ship ownership with its principal place of business in Klifweg 20, 8231 EJ Urk, The Netherlands.

2. At all times hereinafter mentioned, Defendant, CAC, was and is a Panamanian corporation with its principal place of business in Panama City, Panama. On information and belief, CAC has no presence in this district other than the property referenced in paragraph 4 below.

{05217200.1}

## JURISDICTION AND VENUE

3.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the *Federal Rules of Civil Procedure*. Jurisdiction is founded upon Section 1333 of Title 28, United States Code.

4.  Venue is proper in this District because there is property of the Defendant within this District in the form of funds deposited with Stiegler Shipping Company, Inc. and/or its Registered Agent, Gary F. Stiegler. On information and belief, Stiegler Shipping Company, Inc. is an Alabama corporation with its principal place of business in Mobile, Alabama.

## FIRST CAUSE OF ACTION

5.  Plaintiff incorporates herein the allegations in paragraphs 1-4 as if fully set forth herein.

6.  On or about June 24, 2019, CAC entered into a Time Charter with BALTIC, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

7.  Clause 11(a) of said Time Charter obligated CAC to pay hire to be received by BALTIC "on the due date, 15 days in advance . . . ." The Time Charter further provided at Clause 10 for the payment of hire "every 15 days in advance into [BALTIC's] nominated bank account . . . commencing on and from the day of her delivery . . . ." CAC's obligation to pay hire was further emphasized at Clause 7 of the Time Charter. Accordingly, the due date for CAC's first payment for hire was August 7, 2019, the day BALTIC delivered the M/V BALTIC to CAC for service in Tampico, Mexico.

8.  BALTIC provided CAC with an invoice on August 7, 2019 in the amount of $101,250.00, a copy of which is attached hereto as Exhibit "B." However, CAC failed to remit the first hire payment to BALTIC on August 7, 2019 as required by the Time Charter.

9.     Clause 11(a) of the Time Charter provides, "Failing the punctual and regular payment of the hire, or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have."

10.    Pursuant to Clause 11(b) of the Time Charter, "[w]here there is failure to make punctual and regular payment of hire . . . the Charterers shall be given by the Owners 2 clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure . . . ." This Clause required BALTIC to serve an anti-technicality notice on CAC requiring payment of the first hire within two (2) clear banking days.

11.    On August 9, 2019, counsel for BALTIC duly served an anti-technicality notice on CAC and/or its representative wherein BALTIC notified CAC that, by reason of its failure to pay the first hire payment, CAC was in breach of its obligations under the Time Charter. A copy of said anti-technicality notice is attached hereto as Exhibit "C."

12.    Also on August 9, 2019, counsel for BALTIC wrote to CAC advising that if CAC did not pay the first hire payment, then counsel was instructed by BALTIC to pursue CAC for all losses suffered by BALTIC as a result of CAC's breach of the Time Charter. A copy of said letter is attached hereto as Exhibit "D." In the letter, counsel for BALTIC clarified that the losses would be "either the difference between the current C/P and all hire due until a potential replacement fixture is secured, if possible, or, if no market is available, then such sum as to place the Owners in the position they would have been in if the C/P had been performed. That may include payment of full amount of hire for the entirety of the C/P."

13.    Pursuant to the terms of Clause 11(b) of the Time Charter and BALTIC's anti-technicality letter, CAC was notified that the first hire payment must be received no later than

the close of banking in Denmark (that being the place for payment under the Time Charter) on August 13, 2019. CAC was further advised that, if it failed to remit the first hire payment by that date, BALTIC would exercise its right to withdraw the M/V BALTIC from CAC's service and/or accept CAC's repudiation of the Time Charter by failing to make the payment of hire and/or to withhold performance of the M/V BALTIC until payment was made. CAC failed to remit the first hire payment by the close of banking in Denmark on August 13, 2019.

14. Clause 11(a) of the Time Charter also provided:

> At any time after the expiry of the grace period provide in Sub-clause 11(b) hereunder and while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account.

15. On August 13, 2019, counsel for BALTIC served a notice on CAC by which BALTIC exercised its rights to withdraw the M/V BALTIC from CAC's service. A copy of said letter is attached hereto as Exhibit "E." The withdrawal of the M/V BALTIC became effective as of August 13, 2019 and terminated the Time Charter, discharging BALTIC from any and all obligations under the Time Charter following termination.

16. Following service of the August 13, 2019 letter withdrawing the M/V BALTIC, BALTIC was unable to source alternative employment for the M/V BALTIC at its position in Mexico. As a result, the M/V BALTIC was instructed to sail in search of employment on August 13, 2019.

17. CAC's breach of the Time Charter by failing to pay the first hire payment resulted in a total loss to BALTIC in the amount of $1,392,375.00, itemized as follows:

   a.   $101,250.00 for non-payment of the first hire.

b. $1,875.00 for cost of 2.5MT/MGO bunkers consumed while the M/V BALTIC was in Tampico, Mexico awaiting CAC's payment of first hire.

c. $1,221,750.00 for loss of hire for the minimum period of the Time Charter being 180 days pursuant to clause 2 of the fixture recap "MIN 6 MONTHS." Clause 7 of the fixture recap provided a hire rate of $6,750.00 p.d.pr.

d. $67,500.00 for the cost of bunkers consumed during the M/V BALTIC's ballast journey to Portugal (being the place of re-delivery provided at Clause 5 of the fixture recap). The journey was estimated to take 18 days pursuant to a consumption rate of 5MT of MGO per day, as stipulated at Clause 1 of the fixture recap. The cost of MGO at Tampico at the time was $750.00 per MT.

18. BALTIC requested that CAC pay the entire loss amount in order to avoid the commencement of proceedings against CAC to recover same. BALTIC also requested CAC to confirm by the close of business on August 20, 2019, London time, that it would remit payment in full by August 29, 2019.

19. CAC failed to respond with confirmation of payment to BALTIC by the close of business on August 20, 2019. On August 22, 2019, counsel for BALTIC wrote to CAC advising of CAC's failure to confirm payment by the August 20, 2019 deadline and demanded that CAC, by the close of business on August 23, 2019, London time, confirm payment of the loss amount on or before August 29, 2019. A copy of said August 22, 2019 letter is attached hereto as Exhibit "F."

20. To date, CAC has failed to remit payment in full for all losses incurred by BALTIC as a result of its breach of the Time Charter.

21. At all times material hereto, Atlantic Pacific Chartering, Ltd. (hereinafter "Atlantic"), by and through Albert Roquebert, acted as a broker for CAC. Additionally, Stiegler Shipping Company, Inc., by and through its owner, Gary F. Stiegler (hereinafter "Stiegler"), acted as the broker between cargo interests and CAC.

22.     Subsequent to the notice sent by BALTIC to CAC advising of its breach of the Time Charter and demand for payment, Atlantic sent an e-mail to one of its associates dated August 14, 2019 and copied Stiegler as follows:

> The Shipper has already placed [Stiegler] in funds for half of the freight on the trucks to Colombia and we feel certain we can do regular business with the Baltic with this cargo and the U.S. to Haiti business.

A copy of said August 14, 2019 e-mail is attached hereto as Exhibit "G."

23.     Despite a diligent search, CAC cannot be located within the District. However, based on current information and belief, Stiegler is in possession of funds within this District and within the jurisdiction of this Court belonging to CAC which are directly related to CAC's charter of the M/V BALTIC that could be used to satisfy all or part of the losses owing to BALTIC by CAC as a result of CAC's breach of the Time Charter. This property may be attached, pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, to satisfy Plaintiff's claim herein.

WHEREFORE, the premises considered, plaintiff BALTIC prays as follows:

A.      That process in due form of law, according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction, may issue against the said Defendant herein, requiring Defendant to answer all and singular the allegations in this Verified Complaint, failing which a default judgment be entered against Defendant in the sum of $1,392,375.00;

B.      That, since the Defendant cannot be found within this District, this Court issue an order directing the Clerk of Court to issue Process of Maritime Attachment pursuant to Rule B of the *Supplemental Rules for Certain Admiralty and Maritime Claims* attaching CAC's funds in the possession of Stiegler Shipping Company, Inc. and/or Gary F. Stiegler to pay the demands

and claims aforesaid, with interest and costs, and to pay any and all other amounts required to be paid to the Plaintiff; and

C.  That this Court award Plaintiff such other, further and different relief as the Court deems just, proper and equitable.

Respectfully submitted this the 21st day of February, 2020.

/s/ Jaime W. Betbeze
Jaime W. Betbeze          (BETBJ5982)
Timothy A. Clarke         (CLART1440)
jbetbeze@maynardcooper.com
tclarke@maynardcooper.com

Attorneys for Plaintiff
BALTIC BEHEER BV&D van KURK,
as owner of the M/V BALTIC

OF COUNSEL
MAYNARD, COOPER & GALE, P.C.
RSA Battle House Tower
11 North Water Street, Suite 24290
Mobile, Alabama  36602
(t) 251.432.0001
(f) 251.432.0007

**Exhibits:**
A – Time Charter
B – Invoice
C – Anti-Technicality Notice
D – 08.09.2019 Letter to CAC
E – 08.13.2019 Letter to CAC
F – 08.22.2019 Letter to CAC
G – 08.14.2019 E-Mail

## VERIFICATION

I, Albertus G. de Vries, declare upon penalty of the laws of the United States as follows:

1. My name is Albertus G. de Vries.

2. I am over the age of eighteen (18) years, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am the owner of BALTIC BEHEER B.V. & D. van URK, Plaintiff herein, which owns the M/V BALTIC.

4. I have read the foregoing Verified Complaint and know the contents thereof, and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The source of my knowledge and the grounds for my belief are the statements made by employees and agents of the Plaintiff, and the business records of the Plaintiff.

6. I am authorized to make this Verification on behalf of the Plaintiff.

Executed on this the 21st day of February, 2020.

_____
Albertus G. de Vries

{05244777.1}