# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BALTIC BEHEER B.V. & D. van URK, as owner of the M/V BALTIC, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:20-cv- 102 |
| v. | ) ) | IN ADMIRALTY |
| CAC MARITIME, INC., | ) ) | |
| Defendant. | ) ) ) | |

## VERIFIED COMPLAINT UNDER RULE B OF THE SUPPLEMENTAL RULES APPLICABLE TO ADMIRALTY

# EXHIBIT  A

2nd Original



# TIME CHARTER©

New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 6th. 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946;
Revised June 12th, 1981; September 14th 1993.

**THIS CHARTER PARTY,** made and concluded in **Hamburg**     1
this **13th** day of **March ~~19~~2018**     2

Between **Plain Island Shipping Company Ltd., A&B c/o MarConsult Schiffahrt (GmbH & Co.) KG, Gasstrasse**     3
**4b, 22761 Hamburg/Germany**

    4
<u>Owners</u> of the Vessel described below, and **Ocean7 Chartering ApS, Kolding/Denmark**     5
    6
    7
<u>as</u> Charterers.     8

**Description of Vessel**     9

Name **MV "MARMISOOL" (see Clause 81 of the Rider Clauses to this C/P) - vessel will be delivered as MV**     10
**THORCO COUGAR but Owners will rename the vessel to MV MARMISOOL at one of the next ports where**
**this is possible** ~~Flag _____ Built _____ (year).~~
~~Port and number of Registry _____ _____~~     11
~~Classed _____ in _____~~     12
~~Deadweight _____ long*/metric* tons (cargo and bunkers, including freshwater and~~     13
~~stores not exceeding _____ long*/metric* tons) on a salt water draft of _____~~     14
~~on summer freeboard.~~     15

~~Capacity _____ cubic feet grain _____ cubic feet bale space.~~     16
~~Tonnage _____ GT/GRT.~~     17
~~Speed about _____ knots, fully laden, in good weather conditions up to and including maximum~~     18
~~Force _____ on the Beaufort wind scale, on a consumption of about _____ long*/metric*~~     19
~~tons of _____~~     20

~~* Delete as appropriate.~~     21
~~For further description see Appendix "A" (if applicable )~~     22

## 1. Duration
    23

The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period     24
of **minimum 11 months – maximum 13 months time charter, exact period in Charterers' option.**     25
Trading always via safe and icefree port(s), safe berth(s), safe anchorage(s) always afloat, always within     26
IWL with lawful harmless generals/steels/project cargo under and on deck

    27
within below mentioned trading limits.     28

## 2. Delivery
    29

The Vessel shall be placed at the disposal of the Charterers at **dropping outward pilot Fort-de-France**     30
**(Martinique) any time, day/night, Saturdays/Sundays/holidays included.**

    31
    32

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

Printed by BIMCO's idea

The Vessel on her delivery 33
shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted 34
for ordinary cargo service, except for special mooring lines required in ports of call under this C/P, having 35
water ballast and with sufficient power to operate all cargo-handling gear 
simultaneously. 36

~~The Owners shall give the Charterers not less than _____ days notice of expected date of~~ 37
~~delivery.~~Owners to keep Charterers closely advised of expected date of delivery and to furnish Charterers 38
with 15/10/7/5 days approximately notice and 3/1 days definite notice

### 3. __On-Off Hire Survey__ 39

~~Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their~~ 40
~~respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct~~ 41
~~joint on-hire/off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition~~ 42
~~of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without~~ 43
~~prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree.~~ 44
~~If either party fails to have a representative attend the survey and sign the joint survey report, such party~~ 45
~~shall nevertheless be bound for all purposes by the findings in any report prepared by the other party.~~ 46
~~On-hire survey shall be on Charterers' time and off-hire survey on Owners' time~~ 47

### 4. __Dangerous Cargo/Cargo Exclusions__ 48

(a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous, 49
injurious, flammable or corrosive nature unless carried in accordance with the requirements or 50
recommendations of the competent authorities of the country of the Vessel's registry and of ports of 51
shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must 52
pass. Without prejudice to the generality of the foregoing, in addition the following are specifically 53
excluded: livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials, 54
**see Clause 71 of the Rider Clauses of this C/P.** 55
56
57
58
59
60
61
62
63
64

~~(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to~~ 65
~~_____ tons and the Charterers shall provide the Master with any evidence he may~~ 66
~~reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO~~ 67
~~regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at~~ 68
~~the Charterers' risk and expense.~~ 69

### 5. __Trading Limits__ – see Clause 76 of the Rider Clauses of this C/P 70

~~The Vessel shall be employed in such lawful trades between safe ports and safe places~~ 71
~~within _____~~ 72
~~_____ excluding~~ 73
74
75
~~_____ as the Charterers shall direct~~ 76

### 6. __Owners to Provide__ 77

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for 78
all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for 79
wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the 80

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U S A), Inc (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

Printed by BIMCO's idea

crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and 81
equipment for and during the service, and have a full complement of officers and crew. 82

## 7. **Charterers to Provide** 83

The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise 84
agreed; shall pay for port charges, including special mooring lines (including compulsory watchmen and cargo 85
watchmen and compulsory
garbage disposal / sludge removal unless actually used), all communication expenses pertaining to the 86
Charterers' business at cost, pilotages,
towages, agencies, commissions, consular charges (except those pertaining to individual crew members 87
or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel 88
puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all 89
such charges incurred shall be paid by the Owners unless Charterers loading/discharging in this port, which 90
case aforementioned expenses are for Charterers' account. Fumigations ordered because of illness of the
crew
shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while 91
the Vessel is employed under this Charter Party shall be for the Charterers' account. All other fumigations 92
shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six 93
months or more. 94

The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a 95
special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard 96
the Vessel. Charterers making good or replace any damaged and/or lost material. Prior to redelivery the 97
Charterers shall remove their dunnage and fittings at their cost and in
their time. 98

## 8. **Performance of Voyages** 99

(a) The Master shall perform the voyages with due despatch, and shall render all customary assistance 100
with the Vessel's crew. The Master shall be conversant with the English language and (although 101
appointed by the Owners) shall be under the orders and directions of the Charterers as regards 102
employment and agency; and the Charterers shall perform all cargo handling, including but not limited to 103
loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk 104
and expense, under the supervision of the Master. 105

(b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or 106
officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if 107
necessary, make a change in the appointments. 108

## 9. **Bunkers** – see Clause 66 of the Rider Clauses to this C/P 109

(a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and 110
diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with: 111
_____ long*/metric* tons of fuel oil at the price of _____ per ton; 112
_____ tons of diesel oil at the price of _____ per ton. The vessel shall 113
be redelivered with: _____ tons of fuel oil at the price of _____ per ton; 114
_____ tons of diesel oil at the price of _____ per ton. 115

* Same tons apply throughout this clause 116

(b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines 117
and auxiliaries and which conform to the specification(s) as set out in Appendix A. 118

The Owners reserve their right to make a claim against the Charterers for any damage to the main engines 119
or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed 120
specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed 121
specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners 122
shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker 123

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

~~consumption, nor for any time lost and any other consequences~~ 124

## 10. Rate of Hire/Redelivery Areas and Notices
125

The Charterers shall pay for the use and hire of the said Vessel at the rate of $ **USD 6,000.-- per day/pro rata** 126
**including overtime (this is the minimum rate, in case actual voyage results permit, further distributions will**
**be in favour of Owners). Hire payable every 15 days in advance into Owners' nominated bank account,**
~~U.S. currency, daily, or $ _____ U.S. currency per ton on the Vessel's total deadweight~~ 127
~~carrying capacity, including bunkers and stores, on _____ summer freeboard, per 30 days.~~ 128
commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part 129
of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition, 130
ordinary wear and tear excepted, to the Owners (unless Vessel lost) ~~at~~ **upon dropping last outward sea pilot in** 131
**Charterers' option 1 safe port within Baltic - Continent - Mediterranean - Black Sea (excluding Sea of Azov)**
**range any time, day/night, Saturdays/Sundays/holidays included**
132
133
unless otherwise mutually agreed. 134

The Charterers shall give the Owners not less than **30/15/10/7/5 days approximate notice and 3/1** days definite 135
notice of the Vessel's
expected date and probable port of redelivery. 136

For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be 137
adjusted to GMT. 138

## 11. Hire Payment
139

By telegraphic Swift bank transfer

(a) *Payment* 140

Payment of Hire shall be made so as to be received by the Owners or their designated payee ~~in~~ 141
**as per Clause 75 of the Rider Clauses to this C/P** ~~--/-- _____~~ 142
143
144
~~in _____~~ 145
~~currency, or~~ in United States Currency, in funds available to the 146
Owners on the due date, 15 days in advance, and for the last month or part of same the approximate 147
amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day 148
as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire, 149
or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to 150
withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) 151
may otherwise have on the Charterers. 152

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the 153
hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold 154
the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever 155
for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire 156
shall continue to accrue and any extra expenses resulting from such withholding shall be for the 157
Charterers' account. 158

(b ) *Grace Period* 159

Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors 160
or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners 161
**2** clear banking days (as recognized at the agreed place of payment) written notice to rectify the 162
failure, and when so rectified within those **2 banking** days following the Owners' notice, the payment shall 163
stand as regular and punctual. 164

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

Printed by BIMCO's idea

Failure by the Charterers to pay the hire within **2 banking** days of their receiving the Owners' notice as     165
provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.     166

### (c) *Last Hire Payment*     167

Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate     168
payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and     169
the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking     170
into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for     171
the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the     172
balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be     173
refunded by the Owners or paid by the Charterers, as the case may be.     174

### (d) *Cash Advances*     175

Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required     176
by the Owners, subject to 2½ percent commission and such advances shall be deducted from the hire.     177
The Charterers, however, shall in no way be responsible for the application of such advances.     178

## 12. **Berths**     179

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that     180
Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat     181
at any time of tide.     182

## 13. **Spaces Available**     183

(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can     184
reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the     185
Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle,     186
apparel, furniture, provisions, stores and fuel.     187

(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the     188
Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a     189
result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.     190
Deck cargo to be in every respect suitable/packed for on deck sea transportation. On deck cargo to be
loaded in accordance with vessel's construction of the hatch covers and permissible strenght of hatch
covers/weather deck, vessel's stability/seaworthiness, lashing manuals under the discretion of Master,
but always at Charterers'/Shippers' sole responsibility/time, risk and expense.

## 14. **Supercargo and Meals**     191

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers'     192
risk and see that voyages are performed with due despatch. Charterers hereby indemnify Owners from all     193
responsibility for accidents to the supercargo whilst on board. Any claim, whatsoever shall be settled by
Charterers directly. However supercargo to sign P&I LoI as presented by Master  He is to be furnished with
free
accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of     194
**USD 15.00** per day and USD 5.00 per meal. The Owners shall victual pilots and customs officers, and also, when 195
authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., amount     196
including in C/V/E (see Clause 77).
Charterers paying at the rate of _____ per meal for all such victualling.     197

## 15. **Sailing Orders and Logs**     198

The Charterers shall furnish the Master from time to time with all requisite instructions and sailing     199
directions, in writing, in the English language, and the Master shall keep full and correct deck and engine     200
logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the     201
Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,     202

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document

showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts     203
required by the Charterers shall be in the English language.     204

16. **Delivery/Cancelling**     205

If required by the Charterers, time shall not commence before **23rd March 2018** and should the     206
Vessel not be ready for delivery on or before **31st March 2018** but not later than **23:59** hours,     207
the Charterers shall have the option of cancelling this Charter Party.     208

   *Extension of Cancelling – see Clause 50 of the Rider Clauses to this C/P.*     209

~~If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready~~     210
~~for delivery by the cancelling date, and provided the Owners are able to state with reasonable certainty~~     211
~~the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is~~     212
~~expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will~~     213
~~cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two~~     214
~~days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date~~     215
~~of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the~~     216
~~Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in~~     217
~~accordance with this Clause.~~     218

17. **Off Hire**     219

In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency     220
of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the     221
arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,     222
agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless     223
resulting from inherent vice, quality or defect of the cargo / lashings, drydocking for the purpose of examination     224
or
painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of     225
hire and overtime, if any, shall cease for the time thereby lost unless the aforesaid caused by Charterers     226
and/or their servants and/or their agents. Should the Vessel deviate or put back
during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident     227
to the cargo / lashings and/or damage to the vessel resulting from accident to cargo/lashings and/or     228
Charterers' personnel travelling with the vessel or where permitted in lines 257 to 258 hereunder, the hire is
to be suspended from the time
of her deviating or putting back until she is again in the same or equidistant position from the destination     229
and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'     230
account. In the event of the Vessel being driven into port or to anchorage through stress of weather,     231
trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses     232
resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be     233
reduced by defect in, or breakdown of, any part of her hull, machinery or equipment unless caused by cargo(es)     234
carried and/or defective lashings and/or Charterers and/or their servants, the time so lost, and
the cost of any extra bunkers consumed in consequence thereof, and all directly related extra proven expenses     235
may be
deducted from the hire with Owners' prior approval thereof.     236

18. **Sublet**     237

Unless otherwise agreed, and subject to Owners' prior approval which not to be unreasonably withheld,     238
the Charterers shall have the **liberty** to sublet the Vessel for all or any part of
the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this     239
Charter Party.     240

19. **Drydocking**     241

The Vessel was last drydocked **03/2014.**     242

~~*(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter~~     243

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc. (ASBA). Any insertion or deletion to the form must be
clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA
assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for 244
bottom cleaning and painting and/or repair as required by class or dictated by circumstances. 245

*(b) Except in case of emergency no drydocking shall take place during the currency of this Charter 246
Party. 247

* Delete as appropriate 248

20. **Total Loss** 249

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or 250
being last heard of) shall be returned to the Charterers at once, in the event that the vessel is declared a CTL 251
(constructive total loss) by Hull and Machinery Insurers, unless the Owners elect otherwise, the Charter
shall be deemed as terminated at the date of the declaration of the CTL.

21. **Exceptions** 252

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the 253
seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always 254
mutually excepted. 255

22. **Liberties** 256

The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels 257
in distress, and to deviate for the purpose of saving life and property. 258

23. **Liens** 259

The Owners shall have a lien upon all cargoes and/or freights and/or all sub-freights and/or sub-hire and/or 260
bunkers for any amounts due
under this Charter Party, including general average contributions, and the Charterers shall have a lien on 261
the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be 262
returned at once. 263

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, 264
which might have priority over the title and interest of the Owners in the Vessel. The Charterers 265
undertake that during the period of this Charter Party, they will not procure any supplies or necessaries 266
or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time. 267

24. **Salvage** 268

All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting 269
Owners' and Charterers' expenses and crew's proportion. 270

25. **General Average** 271

General average shall be adjusted according to York-Antwerp Rules 19941974, as amended 1990, or any 272
subsequent modification thereof, in **London** and settled in **US Dollars** 273
currency. 274

The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will 275
contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1994 276
1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason 277
Clause" as per Clause 31 . 278

Time charter hire shall not contribute to general average. 279

26. **Navigation** 280

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.) Inc. (ASBA). Any insertion or deletion to the form must be
clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA
assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document

Printed by BIMCO's idea

Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners 281
shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew unless 282
crew working as Charterers' servants,
and all other matters, same as when trading for their own account. 283

27. **Cargo Claims** 284

Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club 285
New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent 286
modification or replacement thereof. 287

28. **Cargo Gear and Lights** 288

The Owners shall maintain the cargo handling gear of the Vessel which is as follows: **See Clause 81 of the Rider** 289
**Clauses of this C/P.**

290
291
292
providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also 293
provide on the Vessel for night work lights as on board, but all additional lights over those on board shall 294
be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If 295
required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the 296
Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or 297
insufficient power to operate the same, the Vessel is to be considered to be off hire pro rata to the extent that 298
time is actually lost to the Charterers and the Owners to pay unavoidable stevedore stand-by charges 299
occasioned
thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If 300
required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which 301
case the Vessel shall remain on hire. Costs of shore crane(s) not to exceed the vessel's daily hire. In the 302
event it is necessary to order shore crane(s), same to be first approved by Owners prior ordering,
however Owners not to unreasonably withhold their approval.

29. **Crew Overtime** – See Clause 58 of the Rider Clauses to this C/P. 303

In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents 304
the Charterers shall pay the Owners, concurrently with the hire _____ per month 305
or pro rata 306

30. **Bills of Lading** 307

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates 308
or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the 309
Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts. 310
Irrelevant of Bs/L issued the liability to the ship for cargo damages will be always only for the sea
transport and not from factory to end receivers.

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall 311
indemnify the Owners against all consequences or liabilities which may arise from any inconsistency 312
between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master 313
at their request. 314

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and 315
Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for 316
any loss, damage, expense or delay howsoever caused." 317

(d) No through, liner transshipment or combined transport Bills of Lading and no waybills or sea waybills
are to be issued under this Charter Party. Charterers have the option to use their own format(s) of Bills of
Lading provided Charterers clearly describe themselves as Carrier under the Bills of Lading. Such Bills
of Lading not to show Owners/Vessel as Carrier and Bills of Lading not to contain IOC (Identity of Carrier)
clause.

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document

Printed by BIMCO's idea

Owners to allow Charterers to discharge cargo without presentation of an original Bill of Lading by providing a Letter of Indemnity in accordance with Owners' P&I Club form and wording before discharging on Charterers' letterhead. Letter of Indemnity to be signed by Charterers.

31. **Protective Clauses**                                                                                                   318

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading          319
or waybills issued hereunder:                                                                                               320

(a) CLAUSE PARAMOUNT                                                                                                        321
"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the               322
United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national                    323
legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall               324
be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the                        325
carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said         326
applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such                 327
term shall be void to that extent, but no further."                                                                        328

and                                                                                                                         329

Printed by BIMCO's idea

(b) BOTH-TO-BLAME COLLISION CLAUSE                                                                                          330

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any               331
act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in              332
the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against                   333
all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents        334
loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other                  335
or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the                   336
other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.                      337

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or                   338
objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or           339
contact."                                                                                                                   340

and                                                                                                                         341

(c) NEW JASON CLAUSE                                                                                                        342

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage                      343
resulting from any cause whatsoever, whether due to negligence or not, for which, or for the                               344
consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods,                     345
shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the                   346
payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred,                   347
and shall pay salvage and special charges incurred in respect of the goods.                                               348

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship              349
or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover                     350
the estimated contribution of the goods and any salvage and special charges thereon shall, if required,                   351
be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."                        352

and                                                                                                                         353

(d) U.S. TRADE -DRUG CLAUSE                                                                                                 354

"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the                     355
Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested                        356
narcotic drugs and marijuana to be loaded or concealed on board the Vessel.                                               357

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.) Inc (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences 358
of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel 359
harmless and shall keep them indemnified against all claims whatsoever which may arise and be made 360
against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines, 361
as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account 362
and the Vessel shall remain on hire. 363

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this 364
clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable 365
time the Vessel is released and at their expense put up the bails to secure release of the Vessel. 366

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the 367
event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the 368
Vessel's personnel, but Charterers will be responsible when drugs found in sealed containers or hidden 369
inside cargo."

**and** 370

(e) WAR CLAUSES 371

"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the 372
Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state 373
of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration 374
of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, 375
seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de 376
facto authority or any purported governmental organization maintaining naval, military or air forces). 377

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring 378
the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not 379
exceeding a valuation of _____ In addition, the Owners may purchase and the 380
Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, 381
total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a 382
government program, the Vessel shall not be required to enter or remain at any such port or zone. 383

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter 384
or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such 385
port or zone assume the provable additional cost of wages and insurance properly incurred in connection 386
with master, officers and crew as a consequence of such war, warlike operations or hostilities. 387

(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the 388
Charterers' account." 389

U.S. Clause Paramount
This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the
United States, approved 16 April 1936, which shall be deemed to be incorporated herein, and nothing
herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an
increase of any of its responsibilities or liabilities under said Act.
If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that
extent, but not further

Canadian Clause Paramount
This Bill of lading, so far as it relates to the carriage of goods by water, shall have effect, subject to the
provisions of the Water Carriage of Goods Act, 1936, enacted by the Parliament of the Dominion of
Canada, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed
a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or
liabilities under said act. If any terms or this Bill of Lading be repugnant to said act to any extent, such
term shall be void to that extent, but no further.

32. **War Cancellation** 390

<span style="writing-mode: vertical">Printed by BIMCO's idea</span>

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.) Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or    391
more of the following countries: **U.S.A., C.I.S., Italy, France, Japan, Germany, China, Taiwan, United Kingdom,**   392
**Russia, the nation of Owners domicile and vessel's flag, provided vessel's trade is directly effected,**

   393
   394
   395

either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall   396
redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after   397
discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near   398
open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she   399
then is; or, if at sea, at a near open and **safe** port as directed by the Owners. In all cases hire shall   400
continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this   401
Charter Party shall apply until redelivery. _____   402

### 33. Ice   403

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area   404
where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is   405
risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and   406
remain in the port or area or to get out after having completed loading or discharging. The vessel never to trade   407
in ice or to follow ice-breakers. ~~Subject to the~~ 
~~Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her~~   408
~~size, construction and ice class.~~   409

### 34. Requisition   410

~~Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter~~   411
~~Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid~~   412
~~by the said government in respect of such requisition period shall be retained by the Owners. The period~~   413
~~during which the Vessel is on requisition to the said government shall count as part of the period provided~~   414
~~for in this Charter Party.~~   415
~~If the period of requisition exceeds _____ months, either party shall have the option~~   416
~~of cancelling this Charter Party and no consequential claim may be made by either party.~~   417

### 35. Stevedore Damage   418

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all   419
damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their   420
agents in writing as soon as practical but not later than 48 hours after any damage is discovered, but always   421
latest prior vessel's departure from port of occurence. except hidden damages which will be reported as
soon as they are detected. Such
notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent   422
of such damage.   423

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew   424
and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs   425
of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed   426
and if required passed by the Vessel's classification society.   427

(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option,   428
~~before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will~~   429
~~be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for~~   430
~~which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the~~   431
~~Owners' work.~~ All costs and time for such repairs shall be of the Charterers account.   432

### 36. Cleaning of Holds   433

The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between   434
Voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by   435

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

local regulations, at the rate of **USD 1,000.00 for intermediate hold cleaning** per hold. Removal of dunnage/lash material/cargo residue to be for Charterers' account and responsibility. Freshwater from vessel's freshwater capacity used for intermediate cleaning of holds/deck to be replenished by Charterers at their time and expense 436

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not 437
accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver 438
the Vessel with unclean/unswept holds against a lumpsum payment of **USD 1,000.00 per unclean/unswept hold** 439
in lieu of cleaning including dunnage/debris removal. Dunnage/chemicals/detergents and/or waste removal/disposal as per Marpol or other regulations to be arranged/removed by Charterers at their time/expense.

### 37. <u>Taxes</u> 440

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners 441
resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter 442
Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding 443
taxes levied by the country of the flag of the Vessel or the Owners). 444

### 38. <u>Charterers' Colors</u> 445

The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their 446
own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter 447
Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers 448
shall be for the Charterers' account. Charterers also to be allowed to name the vessel their house name, 449
subject to Owners and class authorities approval. Costs of doing above (including but not limited to administration works ashore and GL surveyor) and restoring same to Owners flag/colour/name to be for Charterers account.

### 39. <u>Laid Up Returns</u> 450

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their 451
underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum 452
period of 30 days if on full hire for this period or pro rata for the time actually on hire. 453

### 40. <u>Documentation</u> 454

The Owners shall provide any documentation relating to the Vessel that may be required to permit the 455
Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial 456
responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' 457
P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates as far as available, 458
valid certificate
of registry and certificates relating to the strength and/or serviceability of the Vessel's gear. 459

### 41. <u>Stowaways</u> 460

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining 461
Access to the Vessel by means of secreting away in the goods and/or containers shipped by the 462
Charterers. 463

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained 464
Access to the Vessel by means of secreting away in the goods and/or containers shipped by the 465
Charterers, this shall amount to breach of charter for the consequences of which the Charterers 466
shall be liable and shall hold the Owners harmless and shall keep them indemnified against all 467
claims whatsoever which may arise and be made against them. Furthermore, all time lost and all 468
expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account 469
and the Vessel shall remain on hire. 470

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to 471

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A) Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document

sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a     472
reasonable time, the Vessel is released and at their expense put up bail to secure release of the     473
Vessel.     474

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained     475
access to the Vessel by means other than secreting away in the goods and/or containers shipped     476
by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including     477
fines, shall be for the Owners' account and the Vessel shall be off hire.     478

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel     479
by means other than secreting away in the goods and/or containers shipped by the Charterers,     480
the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel     481
is released and at their expense put up bail to secure release of the Vessel.     482

## 42. **Smuggling**     483

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any     484
fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof. It is strictly     485
forbidden for the Master, Officers and crew to have any contraband or illegal merchandise on board and
any such contraband or illegal merchandise found on board is to be confiscated by the Master. Any fines
imposed on the vessel, the Owners, Master, Officers, crew or on the Charterers originating from Master
and/or members of the crew by any regulatory body, particularly as regard to smuggling will be for
Owners' account and the Charterers are not to be responsible for any consequences resulting from such
offences. The Owners guarantee that bonded stores will only be purchased with the permission of the
Master.

## 43. **Commissions**     486

A commission of _____ percent is payable by the Vessel and the Owners to _____     487
     488
     489
     490
on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter     491

## 44. **Address Commission**     492

An address commission of _____ percent is payable to _____     493
     494
     495
_____ on hire earned and paid under this Charter     496

## 45. **Arbitration**     497

(a) NEW YORK     498
All disputes arising out of this contract shall be arbitrated at New York in the following manner, and     499
subject to U.S. Law.     500

One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their     501
decision or that of any two of them shall be final, and for the purpose of enforcing any award, this     502
agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with     503
shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of     504
Maritime Arbitrators Inc.     505

For disputes where the total amount claimed by either party does not exceed US $ _____ **     506
the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society     507
of Maritime Arbitrators Inc.     508

(b) LONDON     509
All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree     510

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A.), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business 511
in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, 512
One to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No 513
award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as 514
above, unless objection to his action be taken before the award is made. Any dispute arising hereunder 515
shall be governed by English Law. LMAA rules to apply to both GA and Arbitration 516

For disputes where the total amount claimed by either party does not exceed US $ **50,000.00** ** 517
the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime 518
Arbitrators Association. 519

*Delete para (a) or (b) as appropriate* 520

** *Where no figure is supplied in the blank space this provision only shall be void but the other provisions* 521
*of this clause shall have full force and remain in effect.* 522

If mutually agreed, clauses **46** to **116**, both inclusive, as attached hereto are fully 523
incorporated in this Charter Party. 524

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U S A) Inc (ASBA) Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply BIMCO and ASBA assume no responsibility for any loss, damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document.

## APPENDIX "A"

To Charter Party dated **Hamburg 13th March 2018**

Between **Plain Island Shipping Company Ltd., A&B c/o MarConsult Schiffahrt (GmbH & Co.) KG, Hamburg/Germany as** Owners

And **Ocean7 Chartering ApS, Kolding/Denmark as** Charterers

**Further details of the Vessel: See Clause 81 of the Rider Clauses attached to this Charter Party.**

Printed by BIMCO's idea

This document is a computer generated NYPE 93 form printed by authority of the Association of Ship Brokers and Agents (U.S.A), Inc. (ASBA). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original ASBA document shall apply. BIMCO and ASBA assume no responsibility for any loss. damage or expense as a result of discrepancies between the original ASBA approved document and this computer generated document

## Clause 46 - Ballast Condition

Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast is required, all expenses for same including time used in loading and discharging to be for Owners account unless loading/discharging operation of cargo requires solid ballast.

## Clause 47 - Certificates

a) The lack at any time of any international documentations on board the vessel to prove that the conditions of all gear and equipment for cargo handling complies with international regulations, shall be deemed as a deficiency and hire shall cease up until the time the international documentation is in order.

b) The vessel's cargo gear, hatches and also their equipment is to comply with the international regulations and/or requirements in effect in all ports of call and canals being transited and the vessel at all times to be in possession of valid up-to-date certificates necessary to comply with such regulations and/or requirements (certificates onboard). Should the vessel not meet the regulations and/or requirements, the Owners are to make immediate corrective measures and the thereby lost and unavoidable stevedore stand-by time and directly related expenses involved are to be for Owners' account.

## Clause 48 - International Group of P&I Clubs Financial Security In Respect Of Pollution Clause and International Group of P&I Clubs Oil Pollution Indemnity Clause for penalties and fines

International Group of P&I Clubs Financial Security In Respect Of Pollution Clause

1. Owners warrant that throughout the currency of this charter they will provide the vessel with the following certificates:

(a) If the vessel is over 1,000 gross tons and is registered in, or is required to enter a port or offshore facility in the territorial sea of, a State Party to the International Convention on Civil Liability for Bunker Oil Pollution Damage 2001, a Certificate issued pursuant to Article 7 of that Convention.

(b) If the vessel is constructed or adapted for the carriage of persistent oil in bulk as cargo and is carrying more than 2,000 tons of such cargo, a Certificate issued pursuant to Article 7 of the International Convention on Civil Liability for Oil Pollution Damage, 1992, as applicable.

(c) If the vessel is over 300 gross tons (or as might otherwise be required by US Federal Statutes and Regulations) and is required to enter US navigable waters or any port or place in the US, a Certificate issued pursuant to Section 1016 (a) of the Oil Pollution Act 1990, and Section 108 (a) of the Comprehensive Environmental Response, Compensation and Liability Act 1980, as amended, in accordance with US Coast Guard Regulations, 33 CFR Part 138.

2. Notwithstanding anything whether printed or typed herein to the contrary,

(a) Save as required for compliance with paragraph (1) hereof, owners shall not be required to establish or maintain financial security in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this charter.

(b) Charterers shall indemnify owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the charterers promptly to give alternative voyage orders) which owners may sustain due to non-compliance with any demand or requirement to establish or maintain financial security in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

(c) Without prejudice to paragraphs 2(a) and 2(b), if owners establish or maintain financial security other than to the extent provided in paragraph (1) hereof (in order to enable the vessel lawfully to enter, remain in or leave any port, place or waters), charterers shall, unless otherwise expressly agreed, indemnify owners and hold them harmless in respect of any costs or delay incurred in establishing or maintaining such security.

(d) Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which charterers and/or the holders of any bill of lading issued pursuant to this charter may sustain by reason of any requirement to establish or maintain financial security in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

3. Charterers warrant that the terms of this clause will be incorporated effectively into any bill of lading issued pursuant to this charter.

International Group of P&I Clubs Oil Pollution Indemnity Clause for penalties and fines

(a) Subject to the terms of this Charterparty, as between Owners and Charterers, in the event of an oil pollution incident involving any discharge or threat of discharge of oil, oily mixture, or oily residue from the Vessel (the "Pollution Incident"). Owners shall have sole responsibility for responding to the Pollution Incident as may be required of the vessel interests by applicable law or regulation.

(b) Without prejudice to the above, as between the parties it is hereby agreed that:

(i) Owners shall indemnify, defend and hold Charterers harmless in respect of any liability for criminal fine or civil penalty arising out of or in connection with a Pollution Incident, to the extent that such Pollution Incident results from a negligent act or omission, or breach of this Charter party by Owners, their servants or agents,

(ii) Charterers shall indemnify, defend and hold Owners harmless in respect of any liability for criminal fine or civil penalty arising out of or in connection with a Pollution Incident, to the extent that such Pollution Incident results from a negligent act or omission, or breach of this Charterparty by Charterers, their servants or agents,

provided always that if such fine or penalty has been imposed by reason wholly or partly of any fault of the party seeking the indemnity, the amount of the indemnity shall be limited accordingly and further provided that the law governing the Charterparty does not prohibit recovery of such fines.

(iii) The rights of Owners and Charterers under this clause shall extend to and include an indemnity in respect of any reasonable legal costs and/or other expenses incurred by or awarded against them in respect of any proceedings instituted against them for the imposition of any fine or other penalty in circumstances set out in paragraph (b), irrespective of whether any fine or other penalty is actually imposed.

(c) Nothing in this Clause shall prejudice any right of recourse of either party, or any defences or right to limit liability under any applicable law.

(d) Charterers shall procure that this Clause be incorporated into all sub-charters and contracts of carriage issued pursuant to this Charterparty.

### Clause 49 - International Trade Workers Federation

Any unavoidable delay/cost caused, due to employment terms of crew, to be for Owners' account. Vessel has no ITF, but employment terms of vessel's crew are in accordance with other bona fide trade agreement.

### Clause 50 - Cancellation

Should the vessel not be delivered by the date indicated in clause 16, the charterers shall have the option of cancelling. If the vessel can not be delivered by the cancelling date, the charterers, if required, shall declare within 48 hours after receiving notice thereof whether they cancel or will take delivery of the ship.

### Clause 51 - De-Ratting Certificate

The vessel to be delivered with valid de-ratting exemption certificate on board, and if this does not cover the whole period of this charter and a renewal of certificate or fumigation is necessary, the cost of same and delay of the vessel and any expenses incurred there from are to be for Owner's account.

### Clause 52 - Quarantine

Normal quarantine time and expenses to enter the port are to be for Charterers account but any time of detention and expenses for quarantine due to pestilence, illness, etc., of Master, officers and/or crew are to be for Owners account unless caused by cargoes carried, Charterers, their servant and/or agents.

### Clause 53 - Boycott/Blacklist

Should the vessel be boycotted, blacklisted or picketed or similar incident at any port or place by the shore and/or port labour and/or tugboats and/or pilots or by the government and/or any authority by reason of the vessel's flag or the terms and conditions on which

members of the officers and crew are employed, any direct related extra expenses incurred therefrom are to be for the Owners account, and the Charterers are entitled to put the vessel off-hire for actual time lost by such reason.

### Clause 54 - Cuba/Israel Trading

Owners guarantee that the vessel did not call Cuba.

### Clause 55 - Gangway Watchmen

Watchmen for cargo to be for Charterers account. Vessel to supply gangway watchmen for the vessel from the crew, but if local regulations prohibit this or require additional watchmen from shore then the cost of such gangway watchmen from shore to be for Charterers account, however non-compulsory watchmen to be equally shared between Charterers/Owners.

### Clause 56 - Sludge removal

Sludge oil removal to be equally shared 50/50 between Owners and Charterers unless compulsory and no sludge removal will take place which case same to be for Charterers' account.

### Clause 57 - Pollution Clause

If the Owners are required to establish or maintain a financial security or responsibility in respect of oil or other water pollution damages caused by vessel to enable the vessel to lawfully enter, remain in or leave any port, place, territorial or continuous water or any country or state in performance of the Charter Party, the Owners shall make all arrangements by bond or otherwise as may be necessitated to satisfy such requirements at Owners sole expense.

The Charterers shall be under no responsibility for consequences (including loss of time) of oil or other water pollution damage caused by vessel and any failure or inability of the Owners to do as provided for above and loss of time incurred thereby is to be off-hire.
The Owners shall indemnify the Charterers harmless against all consequences (including fines if any are imposed on the Charterers) of oil or other water pollution damages caused by vessel and any failure or inability of the Owners to do so as provided in preceding paragraph a).

### Clause 58 - Crew Assistance

Time charter hires to include rendering customary assistance by the crew as per STCW 95, which to include:

a)   Raising and lowering cranes/derricks in preparation for loading and/or discharging.
b)   Removing and/or replacing of beams, if any, in preparation for loading and/or discharging.
c)   Preparing vessel's bunker station and manifolds, and assisting and supervising during bunkering.

At first loading berth an on-hire survey (if desired by Charterers including hose test on vessel's hatch covers) will be conducted by an independent surveyor appointed by the charterers to examine the notice of readiness given by Master and/or Owners. Should the vessel not be accepted by an independent surveyor, Charterers will allow Owners 24hrs to rectify vessel's condition failing which Charterers have the option to cancel the Charter Party and all eventual stevedores/cranes standby costs and demurrage directly resulting from the above to be for Owners account.

### Clause 63 - War risk

Additional war risk insurance if any to be for Charterers account. Extra insurance to be paid as per Owners' insurers invoice which not to be higher than what is being quoted by Lloyds of London.

### Clause 64 - Employment

Charterers to endeavour to keep Owners closely informed of vessel's movements and probable employment together with full style of sub Charterers and also agents appointed at each port. Charterers agents will undertake vessel's normal matters, on Owners behalf without charging any additional fee, unless there should be some extraordinary matters, such as attending crew hospitalisation, arranging spare parts and/or repairs if any, or survey done for Owners' account in which case Owners to pay agency fee for respective works mentioned, as per tariff.

### Clause 65 - Vessel info to Charterers

Master to provide Charterers with daily noon reports as per Charterers' standard instructions, whether at sea or in port/in anchorage.

### Clause 66 - Delivery/Redelivery Bunkers

Vessel to be delivered with bunkers as on board (about 235 mtons IFO + about 85 mtons low sulphur MGO). Charterers to bunker for their own purposes and redeliver the vessel with approx. same quanitities as on delivery.
No bunker payment on delivery.

Any difference between delivery and redelivery bunkers to be settled basis Charterers' last paid price, provided bunkering took place at a major bunker place.
Owners option to bunker for their own account during the currency of this CP provided same does not interfere with Charterers operations.

### Clause 67 - Bills of Lading

Bills of Lading issued under this Charter Party to contain Hague or Hague Visby Rules and not the Hamburg Rules.

Neither the Charterers nor their Agents shall permit the issue of any bill of lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owner or on the Charterers' behalf or on behalf of any Sub-Charterers) incorporating, where

not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

### Clause 68 - P and I

Owners guarantee vessel is covered by a first class P&I Club during the entire duration of this Charter Party, Charterers guarantee that they too have first class P&I Club cover.
Owners' P&I Club: The Swedish Club
Charterers' P&I Club: DUTCH P&I

### Clause 69 - On-hire Survey

Vessel to deliver or arrive at first loading port with all holds/cargo carrying compartments clean, dry, swept and in all respect ready to receive any permissible cargo. Should the vessels cargo holds fail cargo pre-loading inspection by local independent surveyor, Charterers have the right to put her off-hire until the vessel is accepted by surveyors.

### Clause 70 - Bimco Double Banking Clause

Deleted.

### Clause 71 - Cargo Exclusions

Trading with projects, steels, IMO in accordance with vessel's certificates.

- Cargo Exclusion Clause
Charterers have the option to carry dangerous and inflammable cargoes provided packed, labelled, loaded, stowed/trimmed, secured, discharged and documented in accordance with requirements of the vessel's flag state, classification society and all relevant IMO regulations as well as rules/regulations of all as countries in which vessel must load and discharge in and countries which vessel must transit through, as well as vessel's dangerous cargo certificates. Such goods to be in accordance with IMDG-code, as amended. Documents relating to hazardous goods to be delivered on board the vessel and handed to the Master prior commencement of loading of such cargo.

With regards to the allowed dangerous cargo it is agreed that any possible extra insurance and any special safety equipment required by local law or regulations to be provided and paid for by charterers.

Any special equipment required over those on board to be provided by Charterers at their expense. Any extra insurance in conjunction with shipment of such cargo to be for Charterers' account. All bulk cargoes are excluded regardless whether listed below or not.

Notwithstanding anything contrary contained in this charter it is expressly agreed by the charterers, that the following cargoes are excluded from carriage:

A/
acids, aluminium ashes, aluminium dross, aluminium ferro-silicon,
aluminium nitrate, aluminium residues, aluminium silicon,
aluminium smelting and by-products, ammonia, ammonium chloride,
ammonium phosphate, ammonium sulphate, andalusite, asbestos, ashes, asphalt and/or its
products, arms/ammunitions (including detonators, tnt, dynamite, explosives, bombs, black
powder, blasting caps, rockets) are exluded only if carriage of same is banned by either
vessel's flag state and/or country of domicile of Owners and/or EU/US/UN.

B/
barium nitrate, bitumen, bones or bone meal, borax in bulk, borings, boycott cargoes, brown
coal and brown coal briquettes, bullion,

C/
calcined pyrites, calcium nitrate, calcium carbide, calcium chloride, calcium floride, calcium
hypochlorite, calcium oxide, calcium oxychloride, canary seeds, carbide, carbon/black
carbon, castor beans, caustic potash, caustic soda, charcoal, charcoal briquettes, chemical
wastes, cotton seed expellers, cotton waste, creosoted goods under/on deck,

Bagged Cement Protective clauses:
Charterers shall have the option to carry bagged cement without limitation during the
currency of this charter. Charterers, however, shall clean the vessels holds thoroughly at
their expense and in their time and shall be responsible for holds inspection at a loading
port. If Charterers require the vessels crew to undertake hold cleaning after discharge of
cargo, they are to pay a lump sum of USD 1,000.-- per used hold as extra crew work fee for
cleaning of holds between voyages.

D/
direct reduced iron ore/pellets/fines or in any form, drugs,

F/
ferro-phosphorus, ferrous meal, ferrous metal, fine iron ore, fire briquettes, fish-/bone-/meat
meal,

G/
gasoline,

H/
hides, hot briquetted iron (hbi), hypochlorate,

I/
indian coal, iron briquettes, iron carbide, iron fines/powder, iron ore fines, iron oxide, iron
sponge, isotopes,

J/
jute,

K/

L/
lead calcined or sulphide or nitrate, lime, line seeds, livestock and/or animals,

M/
magnesia, magnesium nitrate, mammalian meat, manioc and/or manioc pellets, metal sulphide, motor spirits,

N/
naphtha, nepheline syenite, nickel ore, nitro glycerine, nuclear fuel/materials or substances or radio active materials of any kind and/or their waste and/or acids, (class 7 cargo may be carried subject to Owners prior written approval which shall not be unreasonably withheld.)

O/
Oilcakes and/or seeds, oily pieces, oily expellers, olivine sand,

P/
petroleum, pitch in bulk, pitch prill, poultry, pond coal, pesticides, pollard pellets, potassium nitrate (potassium nitrate of fertilizer grade allowed), pyrites,

Q/
quebracho,

R/
radio-isotopes, rapes seed expellers, refuse/garbage of any kind, resin, rutile sand, radioactive materials/products and waste, IMO class 7 always excluded, but can be discussed on a case to case basis and when details of cargo are known and is subject to Owners prior approval.

S/
Salt, saltpetre, sawdust, scrap including motor blocks and turnings, borings, seed cakes, shavings, sludge ore, slurry, sodium nitrate or sulphate, sponge iron, sulphur, sunflower seed expellers/cakes,

T/
taconite, tar and all its products, titanium slag, tobacco, toxic and/or chemical waste, turpentine and it's by-products,

V/
vanadium ore, vermiculite,

W/
War material of any kind is accepted provided not banned or breaking sanctions of vessel's flag and/or country of domicile of Owners and or EU/US/UN., wet hides,

Y/
yellow phosphorous,